We have today for our hearing sitting Judge Kenneth Ripple, Judge Amy Barrett, and I'm Judge Michael Brennan. We will be having audio for Judge Barrett but not video. We also have Attorney Connor and Attorney Whalen present. I will let you know the reason for our delay this arguments. Unfortunately, we've not been able to do that. However, the arguments will be recorded for the court website. We're going to commence with case number one this morning, United States v. Blake. This is appeal number 19-2508. Let's begin with Attorney Connor. Yes, may it please the court. I am Carrie Connor and I am here today on behalf of Airrion Blake. We've raised two primary issues with the court. The first is related to the denial of an oral argument, excuse me, a denial of an evidentiary hearing related to Mr. Blake's claim of ineffective assistance of counsel in his new trial motion. The second issue is a sentencing issue related to the loss valuation used by the court. Ms. Connor, if I could interrupt on that first issue, oftentimes our court has advised litigants with regard to ineffective assistance of counsel. Yes, I'm sorry the audio did a little, the audio went out for a second there, your honor. I apologize. Can you hear me now? Yes, yes. Oftentimes our court has advised litigants with regard to ineffective assistance of counsel claims that those are better brought on collateral attack versus direct appeal. I did want to note for the record that because litigants get to argue ineffective assistance of counsel claims only once, raising it on direct appeal obviously can have impact on the evidentiary record. In other cases, we've advised counsel of this and given them the opportunity if they wish to speak with their client and see if they wish to consider withdrawing just that particular claim, which would be dismissed without prejudice and pursue any other claims. I wanted to raise that with you early in your argument to get your thoughts. Yes, your honor. I am aware of the preference for collateral attack. In terms of the procedural records, you may note that Mr. Blake filed this claim for a new trial motion pro se and at that time wanted to proceed. He is in custody, so I certainly have spoken to him about this, but since the court has brought it up, I think it would be in Mr. Blake's best interest to in fact reserve that issue for collateral review rather than in the procedural form that he had brought it before the trial. I don't know procedurally how we do that at this stage. If we bifurcate the oral argument and allow us to discuss the sentencing issue, but yes, I agree that that is how this should be handled in terms of the ineffective assistance of counsel claim. So you're withdrawing then your appeal on the ineffective assistance, the denial of the new trial motion below on that ground? Yes, on the understanding then that we would preserve that for a collateral attack. Okay, we are willing to face this issue last month and a very similar situation. What we did was dismiss without prejudice that particular claim and then we went forward with Okay, well, thank you very much for giving us that option, your honor. I do believe that that is the prudent way to proceed. If I might discuss the issue. It certainly isn't unusual for the appellant to come before the court with a loss valuation issue regarding actual versus intended loss. But in this case, there is no dispute as to actual loss. It's approximately $149,000 and that is the amount of money that Mr. Blake received in response to his filing in 2011 with the IRS. The problem that we have raised with the court's calculation is that Mr. Blake disputed that he was responsible for 2008, 2009, and 2010 filings. He noted in his interview with the agents, which the government attached to their sentencing memorandum at DE 130, Exhibit 2, that he found several issues in dispute that he believed showed that he had not filed that those three filings. But ultimately, the court never resolved that disputed issue. Ms. Conner, can I ask you one question about that? So the court, let's assume, what if we agree with you that the court failed to make findings on that issue? Mr. Whalen specifically asked Judge VanBakken at the end whether he would have imposed the same sentence under 3553 regardless, and he said yes. So would that be harmless error even in the absence of the findings? No, Your Honor, I don't believe that it would be harmless error. And under Supreme Court precedent, the only way that it could be harmless error is if, in fact, there is a clear understanding of the basis upon which that non-guideline sentence was imposed. Judge VanBakken did not announce the sentence he imposed of 36 months with a clear understanding of how he reached it. He did not specifically discuss 3553A arguments in terms of the appropriate sentence being 36 months. He did not explain to us exactly how he reached that figure. As I point out in our brief, had, in fact, the court used actual laws, the guidelines would have been lower. The 36-month sentence does fall into what would be a guideline range if he had used 300,000, which was the defense's position regarding intended laws. But we don't have enough information to really understand what the court was responding to when Mr. Whalen asked that question. I also think that we have to be very careful. If the court is going to find that there's harmless error simply because a sentencing judge says I would have done the same thing regardless without understanding the error that the court made, then the defendant is deprived of the court must reach the correct guideline calculation. It is impossible for Judge VanBakken to have done that in this case because he reached a $1.5 million loss valuation and then in the next breath said, but I haven't resolved the dispute regarding 2008, 2009, and 2010. Had he not included 2008, 2009, and 2010, his loss valuation would have been somewhere in the neighborhood of $600,000. And that would have brought us down at least two guideline levels. Also, the court never actually resolved the issue of what was the intended loss. The court does make statements that he thought that Mr. Blake would get whatever he wanted out of the IRS, but the court doesn't do an analysis and because he doesn't reach any conclusions regarding 2008, 2009, and 2010, we really don't have an understanding of what the court's reasoning is in reaching the loss valuation that it did. So, under these circumstances, the court must remand for resentencing in order for the district court to make its understanding clear and to make sure that the judge did not make an error because as I said, the $1.5 million valuation is simply not consistent with excluding 2008, 2009, and 2010, which the court specifically said it did not make any independent determination as to. May I reserve the remainder of my time? You may, Ms. Conner. We'll now move to Mr. Whalen. Thank you, Your Honor. May it please the court. Your Honor, the district court did make a finding that Mr. Blake filed the 2008, 2009, and 2010 tax returns and that finding was not clearly erroneous. It also made a finding that Mr. Blake intended to cause more than $1.5 million in loss. That finding was also not clearly erroneous and to be clear, the standard is clear error because these are findings of fact that the district court made. Mr. Whalen, I'm confused about that. If he had made the findings, the problem is in the transcript, it seems like he's made the findings and then he goes back and says, no, I haven't made findings on 2008, 2009, and 2010, and if he had made the findings, I agree with you. I wouldn't see any clear error, but the problem here is more procedural. He hasn't, he didn't make the findings or he said he didn't make the findings. Well, Judge, I think if you look at the sentencing transcript as a whole, he did make the findings. Mr. Blake made two arguments as it relates to loss and the 2008, 2009, and 2010 returns when he objected to the PSR. The first one is on docket 120, page 2, where he does the seven-part objection and says, I didn't file these returns. On page 9 of the sentencing transcript, the district court overruled that objection and adopted the position of the government in probation. Then when you get to page 34 of the sentencing transcript, so that's the finding right there, but when you get to page 34 of the sentencing transcript, while the court's discussing the 3553A factors, it again says Mr. Blake filed separately bogus returns for four years prior to the instant offense. That could only be the 2008, 9, and 10 returns. There were no other returns that could have fit within that category. Now, at the end, defense counsel does ask the court whether it made a finding as to those returns, and the court said it did consider those returns, and then I think we've reconciled it in our briefs as the only real way to understand what the court was saying is to say it did not make an independent finding, which is true. It adopted the position of the probation in government that he filed the 2008, 9, and 10 returns, and so I think that's the best way to interpret what the district court said, but Judge Barrett, to your point, I do agree that if there was an error, it was harmless in this case, and what the Supreme Court in Molina-Martinez said is that you do have to correctly calculate the guidelines in the first instance, and the court can presume prejudice if you don't correctly calculate them, but then what the Supreme Court later says and what this court has said time and again is, but if there is an error in calculating the guidelines in the first instance, an error can be harmless if the court signals that that error in the guideline calculation did not affect its sentence, and that's what Judge Van Bachlen did in this case. He was asked about one guideline in particular. This wasn't a question, Judge, if you miscalculated the guidelines, you know, completely, and you messed up every single guideline, would you have given the same sentence? That wasn't the question. The question related exclusively to the loss amount, because that was really one of the factors that drove the guideline calculation in this case, and Judge Van Bachlen had signaled early in the sentencing hearing that he is a judge who focuses on actual loss, and in our sentencing memorandum, we explicitly noted that the court could calculate based on actual, we suggested that the court might take actual loss into account when it was handing down a sentence, because we know that Judge Van Bachlen is driven by actual loss as opposed to intended loss, and so when I asked the court that at the end, did he actually rely in his calculation on actual loss? He did not rely on actual loss in his calculation, your honor. That's correct. He relied on intended loss, which he found was more than 1.5 million dollars. There again, did he rely on that loss in his calculation? Well, your honor, yes. When he calculated the guidelines, he relied on the 1.5 million dollar amount in reaching the base offense level. I acknowledge there is that statement at the end where he does say that intended loss was 300,000 dollars. Truthfully, again, if you look at the sentencing transcript, I think the only way to really view that statement is that it was just a slip of the tongue by the district court, because it had adopted that more than 1.5 million dollars previously. It had overruled Mr. Blake's objection to that 1.5 million dollar amount previously, and it had reversed the calculation. If you read, if you started the sentence and tried to reverse engineer what he did, it looks like he, relied on something in between, probably the amount of intended, probably the amount of intended loss up to the two payments he thought he, he originally thought he could get as a, under the so-called trust theory. It's very hard to see how he comes up with a calculation. The actual loss was what, 1,500? It was about 150,000, your honor. 150,000. It's hard to see how he came up with the sentence working off that number. Well, your honor, he didn't come up with, he didn't calculate the guidelines working off the 150,000 number. I don't think either party is taking that position. Mr. Blake is arguing he counted, I'm sorry, your honor, go ahead. No, go ahead. I think that's right. You can't. I think what Mr. Blake is arguing when he argued in the district court was that 300,000 was the intended loss, because that was that, a state amount. And Mr. Blake made that argument to the district court, and on pages nine and ten of the sentencing transcript, the court rejected that argument. It said that the estate theory was bogus and that Mr. Blake was fishing for whatever he could get. I know, but when you do the calculations, if you tried to figure out what the judge did in the guideline, in the framework of the guidelines, it looks like he accepted the 300,000. Well, judge, when he calculates the offense level, he is basing that off the $1.5 million. I understand, but when you look at what he actually imposed. Well, your honor, I think what he actually imposed was, I think what he actually imposed was a sentence based on the 3553A factors. And so the court imposed a below guideline sentence based on the intended loss it adopted, the 1.5 million. I guess if you want to look at an actual loss and imposed an above guideline sentence, if you're calculating based on actual loss, which the court did not. And so I think it would be a mistake to try to reverse engineer what guideline range the court hypothetically could have come up with and where the sentence fit within hypothetical guidelines. Because what the court said is the throughout the sentencing, that it's sentence was not imposed based on actual or intended loss, but it was imposed based on what the 3553A factors showed. And I guess your honor, I'm sorry. The impression you have, and you've met, you referred to it a moment ago, is that there was kind of a law of the shop in this particular district court, knew what this particular judge was going to do. And everybody played the game according to the way this judge usually went around sentencing. That doesn't help us very much. No, I understand. The question for this court is whether you correctly calculated the guidelines in the first instance. And whether we can follow his train of thought. Well, your honor, I think whether you can follow his train of thought would relate to a substantive reasonableness challenge. I guess if your honor is trying to ask if you can follow his train of thought as it relates to the loss guideline, he explicitly says he's adopting the more than $1.5 million loss guideline. And if you're looking for further proof that Judge VanBakken did not base the sentence on the guidelines itself, I think I would direct the court to pages 33 and 34 of the tax code. He really talks about what's driving his sentence. And Judge VanBakken doesn't talk about intended loss. He doesn't talk about the guideline range. He talks about the fact that Arian Blake stole $150,000 from the federal government. He talks about the fact that he was defrauding the IRS. There's anarchy on the tax code. And he talks about the 08, 09, and 10 tax returns, the number of returns that Mr. Blake filed. And that in addition to court's comment at the end that it would have imposed the same sentence regardless of the guideline calculation, I think to the extent this court has any concerns about the initial calculation should alleviate this court's concerns that were it to remand to Judge VanBakken, he would impose the same sentence regardless. And that's the harmless error analysis this court should engage. And it doesn't get much clearer than a judge stating that this particular guideline calculation did not affect his sentence. That's what Judge VanBakken said. Unless this court has any further questions, we would ask that you affirm the sentence. Thank you. Thank you, Mr. Whalen. Ms. Conner, we'll go to you. Thank you. I think one of the things that becomes quite obvious in this discussion is that we are forced to guess. We're forced to guess how the guideline calculation ultimately was determined by the court and why the sentence of 36 months was imposed. It's a very generalized statement by the court that it considered 3553A, and they do reference the letter from my client's wife. However, there's no specificity upon which the 36 months is actually determined. If, in fact, the court was using actual loss, our guidelines would have been 21 to 27 months. It is correct that a 36-month sentence does fall in the range of what a $300,000 intended loss would have achieved. But ultimately, what the court did is impose a $1.5 million loss with 16 levels and specifically said, because frankly, I asked the question. I'd like to just get this on the record before you run out of time here. Mr. Whalen pointed on pages 10 and 11 of the sentencing transcript when Judge Van Bachlen goes through his guidelines calculation, and he does reject Mr. Blake's arguments that this was really that he was duped by the sovereign citizen theory that he found in internet chat rooms, etc. On page 11, he does say this calculation is derived as from the intended loss to be $1.5 million because he did not believe Mr. Blake's story that he didn't intend to cause the IRS the loss. Mr. Whalen says we should take that and that explanation for the guidelines calculation as Judge Bachlen having adopted the finding in the PSR, and then the muddy the waters only get muddied later when Judge Van Bachlen says, I didn't make independent findings. Why shouldn't we interpret the sentencing transcript that way? Because it does seem to me in context, I think Judge Van Bachlen was not as clear as would be ideal, but when you read the sentencing transcript, it looks to me like he made the guidelines calculation based on the $1.5 million, but then when he got to $35.53, he used actual loss. But again, Your Honor, I believe what we're forced to guess, because as I cited in my opening brief, the judge talks about all kinds of different things. It's confusing whether he's talking about loss or he's talking about restitution at times, but ultimately, that is why the question was asked, Judge, have you resolved the findings regarding the 2008, 2009, and 2010 disputed filings? And the judge specifically states, specifically states, no, I did not make an independent finding. So even if the court is concluding based on accepting the pre-sentence report, that it is a $1.5 million loss, he is doing so erroneously, because we have a significant disputed issue on the table, which was never resolved. And the judge makes no findings to clue to the court why the 1.5 applied rather than at a minimum excluding 2008, 2009, and 2010. The court must resolve disputed issues. And I am out of time, but I would just say finally that there were significant reasons, and Mr. Blake was very specific about what he found that was not consistent with his filings on the 2008 through 2010. The government only relied, only relied on the signatures. Thank you. Do you have further questions? No, thank you. Judge Barrett? No, thank you. Thank you, Ms. Conner. Thank you, Mr. Whalen. The case will be taken under advisement.